JOSEPH H. HUNT
Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch, Civil Division

ROBERT M. NORWAY
Trial Attorney (D.C. Bar No. 490,715)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, N.W., Washington, D.C. 20530
Telephone: (202) 353-0889
Email: robert.m.norway@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

NORA PHILLIPS; ERIKA PINHEIRO; and NATHANIEL DENNISON,

Plaintiffs,

v.

U.S. CUSTOMS AND BORDER PROTECTION; MARK MORGAN, in his official capacity as acting commissioner of the U.S. Customs and Border Protection; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; MATTHEW ALBENCE, in his official capacity as acting director of the U.S. Immigration and Customs Enforcement; FEDERAL BUREAU OF INVESTIGATION; and CHRISTOPHER WRAY, in his official capacity as director of the Federal Bureau of Investigation,

Defendants.

CASE NO. 2:19-CV-6338-SVW-JEM

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Honorable Stephen V. Wilson
**United States District Judge**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND AND ALLEGATIONS ..... 1

STANDARD OF REVIEW ..... 4

I. Federal Rule Of Civil Procedure 12(b)(1) ..... 4

II. Federal Rule Of Civil Procedure 12(b)(6) ..... 5

ARGUMENT ..... 6

I. Because Dennison's Border Interview Was Authorized, The Court Should Dismiss The Fourth Amendment Claim. ..... 6

A. The international border is a unique environment under the Constitution. ..... 6

B. CBP is authorized to conduct suspicionless border searches. ..... 7

C. The Fourth Amendment claim fails because Dennison was lawfully examined while crossing the border. ..... 8

II. Even Assuming, *Arguendo*, That A Heightened Standard Was Required, The Factual Allegations Demonstrate That Officials Had Reasonable Suspicion To Question Dennison. ..... 9

III. Because Plaintiffs Have Not Shown A Substantial Likelihood Of Future Injury, Plaintiffs' Requests For Prospective Injunctive Relief Should Be Dismissed Pursuant To Rule 12(b)(1). ..... 11

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

Cases Page(s)

*Almeida-Sanchez v. United States*,
413 U.S. 266 (1973) .......... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5, 10, 11

*Carroll v. United States*,
267 U.S. 132 (1925) .......... 7, 8

*City of Los Angles v. Lyons*,
461 U.S. 95 (1983) .......... 12

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 6

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336, 347 (2005) .......... 5

*Gamble v. Boyd Gaming Corp*,
No. 2:13-cv-1009-JCM, 2014 WL 1331034 (D. Nev. Apr. 1, 2014) .......... 1

*Hodgers-Durgin v. De La. Vina*,
199 F.3d 1037 (9th Cir. 1999) .......... 13

*Katz v. Pershing, L.L.C.*,
672 F.3d 64 (1st Cir. 2012) .......... 12

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 6

*McCarthy v. United States*,
850 F.2d 558 (9th Cir. 1988) .......... 5

Cases, continued — Page(s)

*Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357 (1998) .......... 11

*Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036 (9th Cir. 2003) .......... 4, 5

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) .......... 12

*Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007) .......... 8, 9

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) .......... 13

*United States v. Arnold*, 533 F.3d 1003 (9th Cir. 2008).......... 8, 9

*United States v. Braks*, 842 F.2d 509 (1st Cir. 1988) .......... 7

*United States v. Cano*, 934 F.3d 1002 (9th Cir. 2019) .......... 7

*United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) .......... 7

*United States v. Flores-Montano*, 541 U.S. 149 (2004) .......... 6, 7, 9

*United States v. Montoya De Hernandez*, 473 U.S. 531 (1985) .......... 6, 7

*United States v. Seljan*, 547 F.3d 993 (9th Cir. 2008) .......... 8

*United States v. Tsai*, 282 F.3d 690 (9th Cir. 2002) .......... 8

Statutes Page(s)

5 U.S.C. § 552a ........ 11

8 U.S.C. § 1324 ........ 2, 10

19 U.S.C. § 482 ........ 7

19 U.S.C. § 1461 ........ 7

19 U.S.C. § 1467 ........ 7

19 U.S.C. § 1496 ........ 7

19 U.S.C. § 1499 ........ 7

19 U.S.C. § 1582 ........ 7, 11, 12

Regulations and Rules

19 C.F.R. §162.6 ........ 7, 11

Fed. R. Civ. P. 8 ........ 5

Fed. R. Civ. P. 12(b)(1) ........ 4, 5, 11

Fed. R. Civ. P. 12(b)(6) ........ 5, 6

## INTRODUCTION

Defendants are federal law enforcement agencies and officials, including the U.S. Customs and Border Protection ("CBP"), the U.S. Immigration and Customs Enforcement's Homeland Security Investigations ("HSI"), and the Federal Bureau of Investigation ("FBI"). Plaintiffs challenge the lawful exercise of Defendants' broad investigative and border protection authority, via the allegations that Defendants engaged in a conspiracy to surveil and collect information on journalists and activists, including themselves. As to Plaintiffs' First Amendment claim, Defendants will answer in due course.[1] Plaintiff Nathaniel Dennison's claim, brought under the Fourth Amendment, however, is subject to dismissal.

This claim alleges that Defendants unlawfully detained and questioned Plaintiff Dennison when he crossed the border at the San Ysidro port of entry in San Diego. This alleged violation of the Fourth Amendment fails because Dennison's examination while crossing the border was lawful under the border search doctrine, and even assuming that a heightened standard was required, the factual allegations of the First Amended Complaint establish that reasonable suspicion existed for his examination. Moreover, Plaintiffs lack standing and the Court may not properly grant their requests to obtain broad, prospective injunctive relief regarding future activities and inspections at the border.

## BACKGROUND AND ALLEGATIONS

In this case, Plaintiffs allege that the Defendants are jointly engaged in a months-long effort to surveil and seize activists and legal workers at the border. First Amended Complaint, Dkt. 16 ("Compl.") at ¶¶ 35-36. The First Amended Complaint alleges

---

[1] The filing of a partial motion to dismiss tolls the time to answer those claims that are not subject to the motion under Federal Rule of Civil Procedure 12(a)(4). *Gamble v. Boyd Gaming Corp.*, No. 2:13-CV-01009-JCM, 2014 WL 1331034, at *3 (D. Nev. Apr. 1, 2014) (discussing cases interpreting Rule 12(b)(4)).

that, as part of this effort, Defendants created a "secret database" of individuals, including Plaintiffs, who provided legal advice to, associated with, supported, or reported on migrants attempting to seek asylum in the United States. *Id.* ¶¶ 36, 46. According to Plaintiffs, the database served as a list of people who Defendants thought "should be targeted for screening at the border" and for further scrutiny, such as associating international "alerts" designed to "limit[] the targets' ability to travel expeditiously." *Id.* ¶ 39. Plaintiffs allege that investigations of individuals identified in this "secret database" were coordinated and jointly managed by CBP, HSI, and the FBI. *Id.* ¶ 40.

The First Amended Complaint also quotes, references, and relies upon the statements made by Government officials concerning Defendants' activities at the time. Plaintiffs quote a statement from CBP explaining that "[c]riminal events, such as the breach of the border wall in San Diego, involving assaults on law enforcement and a risk to public safety, are routinely monitored and investigated by authorities." Compl. ¶ 52. The statement notes further that it is protocol "to collect evidence that might be needed for future legal actions" following such incidents. *Id.*

The First Amended Complaint also quotes a letter dated May 9, 2019, from Randy J. Howe, Executive Director of CBP's Office of Field Operations, to Mana Azarmi of the Center for Democracy and Technology, that provides details of CBP's operations during this period. Compl. ¶ 60 (quoting the letter attached as Exhibit A). In this letter, the official explained that:

> CBP partnered with the Government of Mexico and other law enforcement agencies. CBP was also investigating possible violations under 8 U.S. Code § 1324, which pertains to any person who encourages or induces an alien to enter the United States, knowing or in reckless disregard that they are doing so in violation of law. A number of journalists and photographers were identified by Mexican Federal Police as possibly assisting migrants in crossing the border illegally and/or as having some level of participation in the violent incursion events. Imperial Beach Border Patrol Station Agents

> were attacked multiple times by caravan groups on the border attempting to illegally cross.

Exhibit A at 1. The letter also noted that sources had identified "a number of people involved in assisting migrants in crossing the border illegally or having witnessed the violent actions taken against law enforcement at the border." *Id.* As such, "CBP followed through with appropriate investigatory queries" that were "standard law enforcement practice." *Id.* The letter also made clear that "CBP does not target journalists for inspection based on their occupation or their reporting." *Id.*

Nevertheless, Plaintiffs allege that, because of their inclusion in the allegedly "secret database," they were subject to surveillance, detention, and questioning while crossing between the United States and Mexico. Nora Phillips alleges that she was detained and deported from Mexico by Mexican authorities because of an "alert" placed on her by Defendants as a result of Defendants' surveillance. Compl. ¶¶ 64-100. Based on these allegations, she brings a First Amendment claim against all Defendants.[2] *Id.* ¶¶ 149-153. Erika Pinheiro also alleges that she was detained and deported from Mexico by Mexican authorities as a result of Defendants' surveillance and investigations. *Id.* ¶¶ 101-120. She too asserts a First Amendment claim against all Defendants. *Id.* ¶¶ 149-153.

---

[2] Defendants understand Plaintiffs' First Amendment claims to be grounded in retaliation, and narrowly based on allegations (and inferences drawn from the allegations of the First Amended Complaint) that Defendants did not have a legitimate law enforcement or other governmental purpose to take any investigative step or enforcement action with respect to Plaintiffs. A broader claim—that law enforcement agencies my not investigate, or collect records concerning, individuals because they are engaged in First Amendment-protected activities—is without merit. Should Plaintiffs intend their claims to be broader than Defendants' understanding, then this claim is ambiguous enough to require Plaintiffs to restate their claims pursuant to Federal Rule of Civil Procedure 12(e). Alternatively, if Plaintiffs contend that their First Amendment claims are broader than Defendants' understanding, Defendants respectfully request an opportunity to brief the viability of such a claim.

Nathaniel Dennison alleges that he was detained and questioned by Defendants while crossing the border on January 10, 2019. Compl. ¶¶ 129, 145. Dennison contends that he was in Mexico to create a documentary about migrant youth. *Id.* ¶ 122. He alleges that, on New Year's Eve, he was alerted a disturbance at the border, and that he travelled to the border with video equipment to document the "conflict that erupted once [the migrants] arrived at the border fence." *Id.* ¶ 128.

Thereafter, on January 10, 2019, Dennison alleges that he crossed the international border at the San Ysidro port of entry in San Diego. Compl. ¶ 129. According to the allegations of the First Amended Complaint, Dennison was pulled from the customs line for questioning. *Id.* He alleges that he waited for approximately six hours in a holding area, *id.* ¶ 130, before an officer from HSI questioned him for about 45 minutes, *id.* ¶ 132. Dennison avers that the officer questioned him about his business in Mexico, his interactions with the migrant caravans, and whether he helped organize the migrant caravans. *Id.* The officer also allegedly questioned Dennison regarding his role, if any, in protests that occurred in Charlottesville, Virginia and elsewhere. *Id.* ¶¶ 137. The First Amended Complaint alleges that Dennison was a "top target" in Defendants' investigations. *Id.* ¶ 145. Based on these allegations, Dennison brings a First Amendment claim, as well as a claim that Defendants violated the guarantees of the Fourth Amendment. *Id.* ¶¶ 149-153 (First Amendment claim), 154-159 (Fourth Amendment claim).

## STANDARD OF REVIEW

### I. Federal Rule Of Civil Procedure 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction may be made pursuant to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege sufficient facts to establish jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039

n.2 (9th Cir. 2003). In considering a Rule 12(b)(1) motion, the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## II. Federal Rule Of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In other words, while courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555.

Establishing the plausibility of a complaint's allegations is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Although a plaintiff's specific factual allegations may be consistent with a plaintiff's claim, a district court must assess whether there are other "more likely explanations" for a defendant's conduct such that a plaintiff's claims cross the line "from conceivable to plausible." *Id.* at 680-81 (quoting *Twombly*, 550 U.S. at 570). This standard represents a balance between the notice requirements of Rule 8 and the need to prevent "a plaintiff with a largely groundless claim" from "'tak[ing] up the time of a number of other people.'" *Twombly*, 550 U.S. at 557-58 (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## ARGUMENT

The Court should dismiss the second claim of the First Amended Complaint. This Fourth Amendment claim—brought by Dennison against all Defendants—fails because (1) Dennison's examination while crossing the border was lawful under the border search doctrine, and (2) even assuming that a heightened standard was appropriate, the factual allegations of the First Amended Complaint establish that reasonable suspicion existed. Moreover, Plaintiffs fail to present a proper basis for the Court to entertain their request for broad injunctive relief related to inspection activities at the border.

### I. Because Dennison's Border Interview Was Authorized, The Court Should Dismiss The Fourth Amendment Claim.

#### A. The international border is a unique environment under the Constitution.

The "Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." *United States v. Montoya de Hernandez*, 473 U.S. 531, 538 (1985). The United States, as a sovereign nation, has the inherent authority to protect its borders and control who and what crosses into and out of its territory. *See United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). At the same time, travelers have a lower expectation of privacy at the border. *See Montoya de Hernandez*,

473 U.S. at 539-40; *Flores-Montano*, 541 U.S. at 154 ("[T]he expectation of privacy is less at the border than it is in the interior."). Consequently, the Government may search the "persons and effects of entrants . . . [at international borders without being] subject to any requirement of reasonable suspicion, probable cause, or warrant." *Montoya de Hernandez*, 473 U.S. at 538; *see also United States v. Braks*, 842 F.2d 509, 511 (1st Cir. 1988).

This principle—the border search exception—is a "'historically recognized exception to the Fourth Amendment's general principle that a warrant be obtained.'" *United States v. Cotterman*, 709 F.3d 952, 957 (9th Cir. 2013) (quoting *United States v. Ramsey*, 431 U.S. 606, 621 (1977)). Indeed, "border searches typically do not require any particularized suspicion, so long as they are 'routine inspections and searches of individuals or conveyances seeking to cross our borders.'" *United States v. Cano*, 934 F.3d 1002, 1012 (9th Cir. 2019) (quoting *Almeida-Sanchez v. United States*, 413 U.S. 266, 272 (1973)). In other words, border searches are "reasonable simply by virtue of the fact they occur at the border." *Id.* (quoting *Ramsey*, 431 U.S. at 616).

**B. CBP is authorized to conduct suspicionless border searches.**

Congress has conferred broad authority on customs officers to search all persons coming into the United States from foreign countries. 19 U.S.C. §§ 482, 1461, 1467, 1496, 1499, 1582. Section 1582, for example, provides that "all persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents." CBP's regulations similarly notify "[a]ll persons, baggage and merchandise arriving in the Customs territory of the United States from places outside thereof" that they "are liable to inspection and search by a Customs officer." 19 C.F.R. § 162.6. Indeed, the Supreme Court recognizes that a traveler crossing an international border may reasonably be required "to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in."

*Carroll v. United States*, 267 U.S. 132, 154 (1925). The Court recognizes these statutes as "granting the executive plenary authority to conduct routine searches and seizures at the border, without probable cause or a warrant." *United States v. Seljan*, 547 F.3d 993, 1001-02 (9th Cir. 2008) (quoting *Montoya de Hernandez*, 473 U.S. at 537). Thus, unless otherwise exempt, CBP is authorized to search and examine all persons entering the United States, including United States citizens, without reasonable suspicion, probable cause, or warrant.

**C. The Fourth Amendment claim fails because Dennison was lawfully examined while crossing the border.**

Although Dennison attempts to plead around the broad authority of customs officials to examine persons entering the United States by alleging his interview on January 10, 2019, was "motivated by, at best, an interest in ordinary criminal investigations," the motivations of the officials have no legal significance in this context. *See United States v. Tsai*, 282 F.3d 690, 694 (9th Cir. 2002) (holding that, as a general matter, an official's "subjective motivation for the search" does not "impose a warrant requirement that ordinarily does not exist at the border"). Customs officials may conduct suspicionless searches and examinations at the border for any reason so long as the searches are considered "routine." *Tabbaa v. Chertoff*, 509 F.3d 89, 98 (2d Cir. 2007) (citing *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006)).

While the line between "routine" and "non-routine" searches is not clearly defined, courts have held that "routine" searches include "searches of outer clothing, luggage, a purse, wallet, pockets, or shoes which, unlike strip searches, do not substantially infringe on a traveler's privacy rights." *Id.* (citation omitted). Strip, body cavity, or involuntary x-ray searches are more invasive and require reasonable suspicion. *United States v. Arnold*, 533 F.3d 1003, 1007 (9th Cir. 2008) (citing *Montoya de*

*Hernandez*, 473 U.S. at 451 n.4). The key factor is the level of intrusiveness of the search. *Id.*

Here, there are no allegations that an intrusive search was conducted. Dennison does not allege that he was subjected to a strip, body cavity, or involuntary x-ray search—he alleges only that he was delayed for approximately 6 hours incident to a 45-minute examination about his activities while in Mexico. *See* Compl. ¶¶ 130, 132. First, such minimally intrusive examinations are authorized and lawful. *See, e.g.*, *Tabbaa*, 509 F.3d at 98-99 (holding that custom officer's questioning of the plaintiff's activities while at a conference is "not materially different" from the types of questions officers typically ask prospective entrants).

Second, the length of the alleged delay does not transform Dennison's examination into a detention that requires reasonable suspicion. In *United States v. Flores-Montano*, the Court held that a one-hour delay incident to a border search did not render that search "non-routine" because "delays of one to two hours at international borders are to be expected." 541 U.S. at 155 n.3. Further, courts confronted with this issue have found that six-hour delays, while certainly inconvenient, do not rise to "an unexpected level of intrusion into a person's privacy . . . that by itself would render the searches non-routine." *Tabbaa*, 509 F.3d at 100-01 (internal citation omitted). Put simply, the Fourth Amendment does not "shield[] entrants from inconvenience or delay at the international border." *Flores-Montano*, 541 U.S. at 155 n.3. The delay alleged here is not a sufficient basis to state a claim for a violation of the Fourth Amendment.

## II. Even Assuming, A*rguendo*, That A Heightened Standard Was Required, The Factual Allegations Demonstrate That Officials Had Reasonable Suspicion To Question Dennison.

And even if the alleged delay and questioning were to be considered "non-routine," which they should not, the factual allegations presented in the First Amended Complaint fail to present a plausible claim that the border interview of Dennison was

not supported by reasonable suspicion. As explained above, all travelers are subject to inspection and questioning at the border, including questioning about their activities while abroad. Dennison alleges that he was present at the border during an incident on New Year's Eve, one of several incidents that had occurred over several months. Compl. ¶ 128. He acknowledges that Defendants knew, without his volunteering the information, that he was present at the late night "New Year's Eve border disturbance" and "conflict that erupted once [the migrants] arrived at the border fence." *Id.* ¶¶ 128, 135. Indeed, Dennison admits that he was part of a large group that sought out the border disturbance and that he remained at the border until early morning the next day. *Id.* ¶ 128. Dennison was questioned less than ten days later, when he presented himself at the border. *Id.* ¶ 129.

The First Amended Complaint further alleges, via references to official statements from CBP, Compl. ¶¶ 52, 60 n.26, that, at the time of the inspection, CBP was investigating criminal acts, including "possible violations under 8 U.S. Code § 1324, which pertains to any person who encourages or induces an alien to enter the United States, knowing or in reckless disregard that they are doing so in violation of the law." *See* Exhibit A at 1. The First Amended Complaint also alleges that Dennison was an investigatory target. *Id.*

Taken together, these facts do not support a plausible Fourth Amendment violation. A claim is facially plausible when the plaintiff pleads facts that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully," *id.*—the alleged facts must "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. Here, based on the allegations in the First Amended Complaint, the "more likely explanation[]" for Dennison's examination is that officials acted in reliance upon a reasonable exercise of their authority to question him about his activities in Mexico in

the days prior to the border interview. *See, e.g.*, 19 U.S.C. § 1582; 19 C.F.R. § 162.6. The court should rely on "its judicial experience and common sense," *Iqbal*, 556 U.S. at 679—there was sufficient justification to question a person crossing the border less than ten days after a border disturbance that resulted in "conflict," and at which he was admittedly present, about that person's activities abroad. Thus, the allegations in the First Amended Complaint do not cross the line "from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 570). The Court should dismiss the second claim.

## III. Because Plaintiffs Have Not Shown A Substantial Likelihood Of Future Injury, Plaintiffs' Requests For Prospective Injunctive Relief Should Be Dismissed Pursuant To Rule 12(b)(1).

Plaintiffs have not, and cannot, show a future injury with respect to unconstitutional surveillance and screenings at the border. Plaintiffs seek, in part, an order "enjoining Defendants from continuing [their] surveillance and detention operations at the border based on Plaintiffs' First Amendment-protected activity."[3]

---

[3] Plaintiffs request two forms of injunctive relief as remedies for their claims. The first request is for an order enjoining Defendants from conducting future searches of Plaintiffs at the border. Defendants move to dismiss these requests for prospective injunctive relief for lack of standing.

Plaintiffs also seek the expungement of certain unidentified records created and maintained by Defendants. Compl. ¶ 153. Even assuming Defendants collected information from Plaintiffs in violation of the First or Fourth Amendments, it is a separate question whether the Government may keep or use that information, even in criminal proceedings. *See, e.g.*, *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 362-63 (1998) (noting that illegally obtained evidence need not be suppressed in grand jury proceedings, civil tax proceedings, and civil deportation proceedings). Depending upon the particular records and information contained in those records, expungement may not be an available remedy. For example, Dennison was provided certain records from the FBI's Central Records System. The FBI may maintain such records, even if the records describe individual's First Amendment-related activities, if expressly authorized by statute or if such records were "pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). Thus, Defendants note that there are serious questions whether this Court can redress the purported injury of maintaining

Compl. ¶ 153. However, as explained above, the Government's authority to enforce the customs and immigration laws during border crossings is plenary—extending to all persons entering the United States, including United States citizens. Officials may conduct searches and examinations, without seriously invading a person's privacy, of a traveler exiting or entering the United States without reasonable suspicion, probable cause, or a warrant.

Congress has likewise provided officials with statutory authority to stop and search, at the border and without a warrant, any person coming into the United States from a foreign country. 19 U.S.C. § 1582. Consequently, even if Plaintiffs were subject to surveillance and screenings at the border in the future, they cannot establish that such actions would violate the First or Fourth Amendments, because every person travelling into and out of the United States is subject to search and examination.

Furthermore, neither Phillips nor Pinheiro allege that they were delayed, detained, or questioned by officials from the United States government, and neither Plaintiff brings a Fourth Amendment claim. Phillips and Pinheiro cannot rely on their allegations to establish a likelihood of future injury because a "federal court [can] act only to redress injury that fairly can be traceable to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Thus, neither Phillips nor Pinheiro can seek or obtain an injunction relating to border inspections.

Similarly, because of the close temporal proximity between Dennison's examination and the disturbance at the border, Dennison allegations that he would be

---

any records in existence, questions which cannot be addressed until the purported records are identified. *See, e.g.*, *Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012) ("[P]laintiff must show that a favorable resolution of her claim would likely redress the professed injury.").

subject to future inspections amount to mere speculation, which is insufficient to establish standing. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

For these reasons, Plaintiffs cannot show a substantial likelihood of future injury for prospective injunctive relief. *See, e.g.*, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999). Consequently, and because "a plaintiff must demonstrate standing . . . for each form of relief that is sought," *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citations omitted), the Court should dismiss Plaintiffs' requests for prospective injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion, dismiss the second claim in the complaint and Plaintiffs' requests for prospective injunctive relief.

Dated: December 16, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

BRIGHAM J. BOWEN
Assistant Branch Director
Federal Programs Branch, Civil Division

/s/ Robert M Norway

ROBERT M. NORWAY
Trial Attorney (D.C. Bar No. 490,715)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, N.W., Washington, D.C. 20530
Telephone: (202) 353-0889
Email: robert.m.norway@usdoj.gov

*Counsel for Defendants*