UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:19-CV-6338-SVW-JEM | Date | March 9, 2020 |
|---|---|---|---|
| Title | *Nora Phillips, et al. v. U.S. Customs & Border Protection, et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:** IN CHAMBERS ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS [18]

Nathaniel Dennison ("Dennison"), Nora Phillips, and Erika Pinheiro (together "Plaintiffs") bring this complaint under the First and Fourth Amendments against the United States Customs and Border Protection ("CBP") and various other United States immigration and law enforcement agencies and their directors (together "Defendants"). Although all Plaintiffs have alleged First Amendment claims against all Defendants, this motion pertains only to Dennison's Fourth Amendment claims based on his allegedly unlawful search and seizure at the United States border. For the reasons stated below, Defendants' partial motion to dismiss is DENIED.

I. **Factual Background**

Nathaniel Dennison "is the founder and executive director of Richmond, Virginia-based non-profit Through My Eyes Foundation. A filmmaker, photographer, and journalist by training, Mr. Dennison's non-profit provides camera equipment and training to young people interested in making narrative texts, including documentaries, to share their experiences in their own voices." Dkt 16 at 6. He was working across the border in Tijuana, Mexico before New Year's Eve of 2018. On December 31, 2018, there was a violent clash when a large group of migrants attempted to breach the U.S. border and CBP responded with tear gas. Dkt. 16 at 30. Dennison claims he travelled to the site of the disturbance with camera equipment to help document the event. *Id.* There is no allegation that Dennison was arrested or otherwise detained at that time.

On January 10, 2019, Dennison attempted to return to the United States through San Diego on foot. At the border crossing, CBP allegedly ordered Dennison out of the general entry line and initiated a

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:19-CV-6338-SVW-JEM | Date | March 2, 2020 |
|---|---|---|---|
| Title | *Nora Phillips, et al. v. U.S. Customs & Border Protection, et al.* | | |

secondary inspection. CBP allegedly detained him for over six hours, then questioned him for forty-five minutes about a variety of topics—including his political activities and associations, with at least some questioning not related to the border (i.e. his feelings on the "Charlottesville" protest). Dennison claims this inspection was based on his placement on a secret government watchlist called Operation Secure Line (the "List"), which allegedly targets activists like Plaintiffs because of their support of asylum seekers and migrants. Plaintiffs claim "Defendants created a secret database of 59 individuals—including Plaintiffs—who provided legal advice to, associated with, supported, or covered in the press migrants attempting to seek asylum in the United States." *Id.* at 10. Defendants do not specifically deny the existence of the List, but they also do not admit to the List's existence, purpose, or application in this case.[1]

## II.  **Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" without more. *Id.* (internal quotation marks omitted). "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007).

## III.  **Fourth Amendment Claims**

Dennison claims his detention by the CPB on January 10, 2019 violated his Fourth Amendment right be free from unreasonable searches and seizures. There are two components to Dennison's stop at the border: 1) the six to seven-hour detention in the secondary inspection area, and 2) the allegedly invasive

---

[1] The List is also the subject of at least one other federal lawsuit, albeit in regard to the plaintiff's right to the Free Exercise of religion, in the Southern District of California. *See Dousa v. United States Dept. of Homeland Security, et al.*, No. 19-cv-1255-LAB, (S.D. Cal. Jan. 28, 2020) (denying in part and granting in part defendants' motion to dismiss plaintiff's First Amendment claims stemming from the use of Operation Secure Line and denying Plaintiff's motion for preliminary injunction).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:19-CV-6338-SVW-JEM | Date | March 2, 2020 |
|---|---|---|---|
| Title | *Nora Phillips, et al. v. U.S. Customs & Border Protection, et al.* | | |

questioning about Dennison's political activities. Defendants assert that Dennison's detention and questioning were reasonable under the Fourth Amendment as routine border searches, requiring no justification or suspicion of wrongdoing. Alternatively, Defendants assert that Dennison's stop was justified by reasonable suspicion of wrongdoing.

    a. **Routine Border Searches**

Dennison is a U.S. citizen, but at all relevant times Dennison had not yet cleared the United States border. Defendants' primary contention is that Dennison was only subject to a routine border search as part of his reentry. Dennison does not dispute that the United States has "plenary authority to conduct routines searches and seizures at the border . . . ." *United States v. Flores-Montano*, 541 U.S. 149, 153 (2004). These routine border searches can be conducted for any reason or no reason at all. *United States v. Cotterman*, 709 F.3d 952, 960 (9th Cir. 2013). "This does not mean, however, that at the border anything goes." *Id.* "The reasonableness of a search or seizure depends on the totality of the circumstances, including the scope and duration of the deprivation." *Id.* [2]

Some searches can be so invasive or destructive that they become "non-routine," requiring a "reasonable suspicion" of specific wrongdoing. *Flores-Montano*, 541 U.S. at 153. The Ninth Circuit has concluded "that searches involving extended detention or an intrusive search of a person's body are not routine." *United States v. Bravo*, 295 F.3d 1002, 1006 (9th Cir. 2002). Sometimes the facts and circumstances of a detention can rise to the level of an arrest, even when conducted at the border without a formal warning of arrest. *See United States v. Price*, 921 F.3d 777, 790 (9th Cir. 2019) (despite officer's statements to the contrary, defendant's detention and questioning at LAX following an allegation of sexual battery on an international flight constituted an arrest and custodial interrogation). Like any arrest, arrests at the border require probable cause—"if 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime.'" *Id.* at 790 (quoting *Beier v. City of Lewiston*, 354 F.3d 1058, 1065 (9th Cir. 2004)).

---

[2] Although the general principal is applicable, this is not an "extended border search" as described in *Cotterman* because Dennison had not yet "cleared the border and thus regained an expectation of privacy in accompanying belongings." *Cotterman*, 709 F.3d at 961.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:19-CV-6338-SVW-JEM | Date | March 2, 2020 |
|---|---|---|---|
| Title | *Nora Phillips,et al. v. U.S. Customs & Border Protection, et al.* | | |

Dennison claims that facts and circumstances of his detention go beyond the scope of a routine border search, and the detention was therefore unlawful because it was not supported by reasonable suspicion of criminality or probable cause for his arrest. Defendants' primary argument is that, despite the length of the delay, Dennison's detention and interrogation falls within the scope of a routine border search. As described below, accepting his allegations as true, Dennison has plausibly alleged that his detention went beyond what could be considered a routine border search. The factual record is not complete, and the Court cannot conclude Dennison's detention was a routine border search as a matter of law.

    b. **Non-Routine Search**

Dennison claims the invasive questioning he endured, considering the circumstances, constitutes a non-routine border search. A border search becomes non-routine if it is particularly destructive to the traveler's property or invasive of the traveler's privacy. *United States v. Montoya de Hernandez*, 473 U.S. 531, 541 (1985). Dennison relies on the Ninth Circuit's recent decision in *United States v. Cano*, 934 F.3d 1002, 1019 (9th Cir. 2019) for the proposition that, even with reasonable suspicion, "border officials are limited to searching for contraband only; they may not search in a manner untethered to the search for contraband." Notably, "searches for evidence of past or future border-related crimes" do not justify an invasive border search. *Id.* at 1020. Defendants read *Cano* to support their conclusion that this was a routine border stop, made "reasonable simply by virtue of the fact [it] occur[red] at the border." *Id.* (internal quotation marks omitted).

The Court does need not decide between these two contrary interpretations because *Cano* is not directly applicable to Dennison's circumstance. In *Cano*, the Ninth Circuit analyzed whether a forensic cellphone search at the border was lawful without a reasonable suspicion that the cellphone contained contraband. *Id.* The court concluded that "reasonable suspicion" of contraband was required for invasive searches, such as a forensic search of a cellphone or a cavity search of the body. *Id.* Based on the face of the complaint, there is no indication that Dennison was physically searched at all—let alone invasively. The Court does not read *Cano* to extend to non-physical searches, no matter how invasive the questioning may be.

Plaintiff contends that the allegedly invasive questioning constitutes a search under the Fourth Amendment, but the Court has found no authority to support that conclusion. Dennison's cases involving invasive questioning are inapposite because they occur in significantly different contexts. In *I.N.S. v. Delgado*, 466 U.S. 210 (1984), the Supreme Court concluded that the questioning of factory workers at cites near the United States border did not constitute a search. The Supreme Court's decision in *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975) considered the circumstances under which

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:19-CV-6338-SVW-JEM | Date | March 2, 2020 |
|---|---|---|---|
| Title | *Nora Phillips, et al. v. U.S. Customs & Border Protection, et al.* | | |

"roving patrols" could stop vehicles near the U.S.-Mexico border. Neither case concerned questioning of travelers by CBP at the border.[3] The Ninth Circuit's decision in *United States v. Bravo*, 295 F.3d 1002 (9th Cir. 2002) was primarily concerned with the destructive search of the defendant's toolbox. There is no authority to support the contention that invasive questioning at the border, absent a physical search, constitutes an invasive search under *Flores-Montano*, 541 U.S. at 149 or *Cano*, 934 F.3d at 1019.

    c. **Detention and Arrest**

The reasonableness of a border detention is determined by analyzing all of the facts together, "including the scope and duration of the deprivation . . . ." *Cotterman*, 709 F.3d at 960. At the border, stops lasting less than two hours are generally not arrests, although the presence of handcuff or seclusion may sometimes alter the analysis. *Compare Price*, 921 F.3d at 790 ("[H]andcuffing is a substantial factor in determining whether an individual has been arrested—although it alone is not determinative.") (internal quotation marks omitted), *and United States v. Nava*, 363 F.3d 942, 946 (9th Cir. 2004) ("[W]e conclude that [defendant's] being asked to leave his truck, being handcuffed and told it was for safety reasons, being escorted in handcuffs to the security office, having had a pat down search conducted, and being forced to wait in the locked security office while his truck was searched did not constitute an arrest under the Fourth Amendment."), *with United States v. Butler*, 249 F.3d 1094, 1100 (9th Cir. 2001) ("To a reasonable person, being handcuffed to a bench in a locked office means that he or she is in custody."). It not clear, based on these factual allegations, that Dennison's detention constituted an arrest.

The Ninth Circuit recently held that, "[i]n the context of an international border, an arrest occurs when 'a reasonable person would believe that he is being subjected to more than the temporary detention occasioned by border crossing formalities.'" *Price*, 921 F.3d at 790 (quoting *Bravo*, 295 F.3d at 1009). However, the factual circumstances in *Price* are significantly different from those presented here. Price was detained when landing at LAX from Japan after a young woman accused Price of sexually assaulting her on the flight. *Id.* Price was escorted off the plane by several officers as soon as the plane landed. *Id.* Price was handcuffed and left in a secondary detention area for about two hours. *Id.* When the FBI arrived to question Price, they removed the handcuffs, told him he was not under arrest, and obtained a signed *Miranda* waiver before beginning his questioning. *Id.* The key issues in *Price* were

---

[3] Both cases were also decided long before *Flores-Montano*, which further limits their usefulness in interpreting the border search doctrine.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:19-CV-6338-SVW-JEM | Date | March 2, 2020 |
|---|---|---|---|
| Title | *Nora Phillips, et al. v. U.S. Customs & Border Protection, et al.* | | |

whether Price's statements should be suppressed as resulting from an unlawful arrest and custodial interrogation, and whether officers had probable cause for the arrest. *Id.* The Ninth Circuit ruled that although Price was actually arrested and subject to custodial interrogation, officers had probable cause for the arrest and Price knowingly waived his *Miranda* rights. *Id.* This is unlike the current case, where Dennison claims he was arrested at the border for a political purpose, not a crime. The government has not yet argued that there was probable cause for Dennison's arrest, just that no probable cause was required because Dennison was not arrested.

Although the decision is not binding on this Court, the Second Circuit's decision in *Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007) presents the most factually analogous scenario to this case. In *Tabbaa*, "five U.S. citizens and practicing Muslims with no criminal records" were detained and searched reentering the United States from Canada based on their attendance at the "Reviving the Islamic Spirit Conference at the Skydome in Toronto, Canada." *Tabbaa*, 509 F.3d at 92. The travelers were detained and questioned using "the kind of screening procedure normally reserved for suspected terrorists," including being detained "for several hours, questioned, patted-down, fingerprinted, and photographed." *Id.* Even though *Tabbaa* involved a search component, the court separately analyzed the length of the detention—which lasted upwards of six hours—and the types of questions CBP asked. *Id.* Plaintiffs "were required to answer intrusive questions about their activities at the conference, the content of the lectures they attended, and their reasons for attending." *Id.* at 98. The court found the questioning justified because "these questions are not materially different than the types of questions border officers typically ask prospective entrants in an effort to determine the places they have visited and the purpose and duration of their trip." *Id.* at 98–99. On summary judgment, the Second Circuit found the six-hour detention and questioning was routine—although it pushed the "outer limits of what is permissible absent reasonable suspicion." *Id.* at 99.

The Second Circuit noted that "the Supreme Court has 'consistently rejected hard-and-fast time limits' in evaluating the reasonableness of border searches and has stressed that 'common sense and ordinary human experience must govern over rigid criteria." *Id.* at 100 (quoting *Montoya de Hernandez*, 473 U.S. at 543). The court held that "[w]hile a delay of four, five, or six hours is obviously of more serious magnitude than a delay of one to two hours, common sense and ordinary human experience suggest that it may take up to six hours for CBP to complete the various steps at issue here, including vehicle searches, questioning, and identity verification, all of which we have already found to be routine." *Id.* (internal quotation marks omitted); *see also United States v. Miller*, No. 08-CR-860 (DLI), 2009 WL 2182382, at *9 (E.D.N.Y. July 21, 2009) (determining prolonged questioning about defendant's identity at the U.S. border (after defendant presented a fake passport) did not constitute custodial interrogation). The court in *Tabbaa* noted that where two hours of delay was to be expected at the border, "[t]he additional four hours, while certainly inconvenient . . . cannot be considered an

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:19-CV-6338-SVW-JEM | Date | March 2, 2020 |
|---|---|---|---|
| Title | *Nora Phillips, et al. v. U.S. Customs & Border Protection, et al.* | | |

unexpected level of intrusion into a person's privacy, that by itself would render the searches non-routine." *Tabbaa*, 509 F.3d at 100–01.

Although the detention in *Tabbaa* may have been abnormally long and questions may have been intrusive, the Second Circuit determined that "given the compelling governmental interest at issue here (i.e., the prevention of potential terrorists from entering the United States), and the use of routine procedures by CBP to confirm the identities of people entering the United States, CBP's actions did not violate plaintiffs' rights, even under heightened scrutiny." *Tabbaa*, 509 F.3d at 106–07.

By Dennison's allegation, the present case raises similar issues but is factually distinguishable. Dennison was held between six to seven hours in an isolated area where he did not feel free to leave. Dennison claims that CBP asked highly personal and political questions unrelated to CBP's routine functions, and unlike those a normal traveler would face. Although he was admittedly unrestrained physically, Dennison claims the overall circumstances made him feel as though his privacy was invaded and he was under arrest. There is no search component to Dennison's claim, but, unlike *Tabbaa*'s summary judgment record, the government's justification for the delay is unclear on this record. Considering the alleged circumstances in context, the factual record is not developed enough to determine if Dennison's detention constituted an arrest, or, if Dennison was arrested, whether that arrest was supported by probable cause. Accordingly, further facts are needed, and Defendants' motion to dismiss is DENIED.

### IV. Permanent Injunction

Defendants claim Dennison lacks standing to enjoin future border searches because he has not shown that a reasonable probability exists it will occur again. Accepting Plaintiffs' allegations as true, Dennison may be on a watchlist that would anticipate future lengthy detentions potentially resulting in arrests. Consequently, Defendants' motion to dismiss for lack of standing is DENIED.

However, whether there is a "reasonable suspicion" of criminal activity justifying a non-routine border search or probable cause warranting an arrest in the future will necessarily be a fact-specific inquiry which cannot be fully anticipated here. Assuming this Court eventually concludes Dennison's six-hour delay and questioning was unconstitutional, new circumstances might cause a future non-routine border search or seizure to be constitutionally justified. Likewise, the Court does not have a complete factual record to determine if Dennison was actually arrested, and that the arrest was unlawful. Accordingly, injunctive relief regarding expungement of Dennison's detention record is premature.

An injunction regarding future use of the alleged Operation Secure Line is also premature, as the Court has not yet determined the constitutionality (or existence) of such a List. Resolution of the First Amendment claim enjoining further use of the alleged List and expungement of any previous unlawful

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | 2:19-CV-6338-SVW-JEM | Date | March 2, 2020 |
|---|---|---|---|
| Title | *Nora Phillips, et al. v. U.S. Customs & Border Protection, et al.* | | |

detentions would necessarily resolve any future application of the List. If there is no secret watchlist by which to detain Plaintiffs, any future detention cannot be based on the same allegedly unlwaful List. Accordingly, ruling on Plaintiffs' claim for injunctive relief is premature.

**V.      Conclusion**

For the reasons provided above, Defendants' partial motion to dismiss is DENIED.

IT IS SO ORDERED.

: 

Initials of Preparer      PMC