# Exhibit A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

# JS-6

### CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-06338-SVW-JEM | | Date | 6/22/2021 |
|---|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

Proceedings:   ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [82]

## I.   Introduction

Before the Court is a motion for summary judgment filed by Defendants U.S. Customs and Border Protection ("CBP"), Immigration and Customs Enforcement ("ICE"), Federal Bureau of Investigation ("FBI"), and government officials in their official capacity. For the reasons stated below, the motion is GRANTED.

## II.   Factual Background

### a.   The Migrant Caravan and Federal Response

In late 2018 and early 2019, tens of thousands of people approached the U.S.-Mexico border in a phenomenon referred to as the "migrant caravan." Plaintiffs' Revised Statement of Genuine Disputes, Government's Facts ("GF"), Dkt. 102-1 ¶ 97. CBP responded by opening a multi-agency intelligence gathering and coordination operation referred to as Operation Secure Line. *Id.* ¶¶ 98-99; *see also* Plaintiffs' Statement of Genuine Disputes, Plaintiffs' Facts ("PF") ¶¶ 1-11, 20-24 (describing several interagency working groups gathering intelligence related to the migrant caravan).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | | Date | 6/22/2021 |
|---|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | | |

CBP was "looking for individuals who may have been organizing the caravan and encouraging people to try and enter the United States illegally." Defendants' Appendix I, Dkt. 82-3, Ex. 8, Deposition of Lea Di Senso at 96. CBP used both open and law enforcement sources to obtain a "general awareness" of caravan organizers. App'x I, Ex. 16, Deposition of Roy Villareal at 32.

### b. The Caravan Document

In connection with these efforts, a CBP official prepared a PowerPoint presentation containing information about individuals allegedly associated with the caravan. That document is the subject of this lawsuit (hereafter, "caravan document" or "document").

The caravan document was prepared by Juan Rodriguez, then-acting special operations supervisor with CBP's San Diego Foreign Operations Branch Liaison Unit. GF ¶ 135.[1] Rodriguez's supervisor instructed him to create "a visual picture or representation" of information about individuals thought to be associated with the caravan. *Id.* ¶ 137. Rodriguez searched through and reassembled information previously gathered by CBP into a PowerPoint presentation. *Id.* ¶¶ 140-42. The document was presented at a weekly command staff meeting for San Diego border patrol. *Id.* ¶¶ 122, 138.

The document was titled, "San Diego Sector Foreign Operations Branch: Migrant Caravan FY-2019 Suspected Organizers Coordinators, Instigators, and Media." App'x II, Ex. 25. It was dated January 9, 2019. *Id.* The document contains the names and photographs of 67 individuals, and it included fields for information such as date of birth, citizenship status, and role in the caravan. *Id.*

The document was publicized in March 2019 when a government employee encountered it on a computer system and provided a copy to members of the media. GF ¶¶ 127, 133.

Plaintiffs are three individuals who appeared on the caravan document.

---

[1] The San Diego Foreign Operations Branch primarily functions as a liaison with the government of Mexico. GF ¶ 120.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | |

### c. Plaintiff Dennison

Plaintiff Nathaniel Dennison is a documentary filmmaker who runs a nonprofit. GF ¶ 1. Dennison traveled to Mexico to perform the work of his nonprofit with the migrant caravan. *Id.* ¶ 8.

Dennison was present during an incident at the U.S.-Mexico border on December 31 and January 1, 2019, during which migrants attempted to scale the border wall. *Id.* ¶¶ 10, 104. During this same incident, the government believed that migrants "were encouraged and enticed to ... assault border patrol agents by throwing rocks at them." App'x I, Ex. 6, Deposition of Stephen Crudale at 135. The government received information suggesting Dennison was involved in organizing or providing assistance to migrants during this incident. GF ¶¶ 13-14; Crudale Depo. at 138-39; App'x III, Ex. 26.

Dennison appears in the caravan document with his role described as "Suspected Antifa/Organizer." Ex. 25, at 701.

Dennison returned to the United States by crossing at the San Ysidro port of entry on January 11, 2019. GF ¶ 16. After presenting his passport, Dennison was referred to a waiting room for further inspection where he remained for what he estimated was six hours. Plaintiffs' Ex. 3, Deposition of Nathaniel Dennison, at 102. An officer then questioned Dennison for 45 minutes. GF ¶ 25. Dennison was asked questions about his presence and role at the border wall incident. *Id.* ¶ 28. He was also asked broader questions, such as "why I was working with the migrant caravan; my thoughts of the migrant caravan; my thoughts about the wall and border issue; if I saw myself as Antifa or anti-fascist; if I was present and what my association with Standing Rock and Charlottesville; how my political views affected the work I do; how I felt about events such as Standing Rock and Charlottesville; if I had previous connections to people within those events." Dennison Depo., at 109.

After the interview, Plaintiff was permitted to collect his passport and enter the U.S. GF ¶ 31.

Between September 22, 2019 and September 22, 2020, Dennison crossed the U.S.-Mexico border 116 times. *Id.* ¶¶ 46-48. With one exception, Plaintiff has not been questioned or searched when crossing the U.S.-Mexico border. *Id.* There is no evidence in the record connecting that exception, a search and questioning on January 5, 2020, to Plaintiff's appearance on the caravan document or to his

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | |

journalistic or philanthropic activities.[2]   Plaintiff crossed the U.S.-Mexico border ten times between June 5, 2020 and September 22, 2020.  *Id.* ¶ 45.

During 2019, Dennison received $4,472.60 in donations for his nonprofit organization.  *Id.* ¶ 50. That amount was greater than in any prior fiscal year.  *Id.*

Plaintiff claimed that he was unable to continue his work in Mexico for two years and lost $300,000 in funding for international projects and $80,000 per year in salary as a result of the government's conduct.  App'x I, Ex. 3, Interrogatory Responses, at 9-11.  Dennison also claimed that he lost camera equipment left behind in Mexico as well as valuable footage.  *Id.*; Second Amended Complaint ("SAC"), Dkt. 77 ¶ 164.

### d.  Plaintiff Phillips

Plaintiff Nora Phillips is an attorney who works as the Legal Director for Al Otro Lado, an organization that provides legal and mental health services to immigrants.  GF ¶ 2; SAC ¶ 4.

CBP appeared to become interested in Al Otro Lado's connection to the migrant caravan in late 2018.  CBP received intelligence connecting an individual associated with Al Otro Lado to the migrant caravan, to suspected fraudulent activity relating to immigration, and to improper presentments at ports of entry.  Crudale Depo. at 152-54; App'x 2, Ex. 27, at 717; App'x 3, Ex. 28, at 733-39.[3]

In the caravan document, Phillips's role is described as "[u]nknown."  Ex. 25, at 706.

---

[2] On January 5, 2020, Dennison crossed the border from the U.S. to Mexico, stopped less than 50 yards from the border to ask a Mexican man for directions, and immediately drove back to the border to re-enter the U.S.  GF ¶ 39.  Upon reentering the U.S., CBP asked Dennison why he had crossed and immediately returned that day and why he had recently crossed the border so frequently.  GF ¶ 41.

[3] Plaintiff objects to this intelligence on hearsay grounds.  GF ¶ 126.  However, the Court does not rely on the truth of the underlying allegations.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | | Date | 6/22/2021 |
|---|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | | |

On January 31, 2019, Phillips took a family trip to Mexico. *Id.* ¶ 52. While passing through the airport in Guadalajara, the Mexican immigration officers informed Phillips that there was an alert on her passport. *Id.* The officers took Plaintiff aside for further questioning. *Id.* ¶ 54. When Phillips mentioned her role with Al Otro Lado, the officers agreed that this was probably the reason for the alert, and Plaintiff thought it was implied that the U.S. was responsible for the alert, but she admitted that the Mexican officers did not say this directly. Plaintiffs' Exhibit 4, Dkt. 96-1, Deposition of Nora Phillips at 66, 92. Two hours later, Phillips was informed that Mexican immigration would not permit her to enter Mexico, and she returned to the United States the following morning. GF ¶ 61. Plaintiffs offer no evidence that the U.S. Government, much less the Defendants in this case, were responsible for the Mexican government's decision to deny Phillips entry.

Phillips testified that her job responsibilities changed after the incident at the Guadalajara airport. Phillips stated that "we [referent unclear] basically decided that I wasn't going to travel to Mexico for the foreseeable future even if it was years. My health got a lot – dramatically worse ... So I was very sick, so I was working from home instead of being able to go to the office." Phillips Depo. at 110-11. She further testified that "I really tried to shift as much as I could of my work to something – to things that were, you know, L.A., which meant that the program that I run in Mexico for people who have been deported from the U.S. got just decimated." *Id.*

Phillips did attempt to travel into Mexico on one additional occasion. GF ¶ 67. On August 28, 2019, Mexican officials turned Phillips away at the San Ysidro port of entry due to an alert on her passport. However, Phillips was permitted to enter Mexico the next day. *Id.* ¶ 68. Phillips was approved for one-year temporary residency by the Mexican government on August 29, 2019, *id.* ¶ 71, and CBP approved Phillips's application for a SENTRI[4] pass on June 3, 2019, *id.* ¶ 73. Phillips has not traveled outside the United States since January 1, 2020. *Id.* ¶ 76.

Phillips did not explicitly testify that her inability to travel to Mexico was due to the incident at the Guadalajara airport as opposed to her health issues. *See* Phillips Depo. at 110-11. Nor did Plaintiffs

---

[4] SENTRI is a CBP program "that allows expedited clearance for pre-approved, low-risk travelers upon arrival in the United States. Participants may enter the United States by using dedicated primary lanes into the United States at Southern land border ports." U.S. Customs and Border Protection, *Secure Electronic Network for Travelers Rapid Inspection*, https://www.cbp.gov/travel/trusted-traveler-programs/sentri.

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|

| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* |
|---|---|

provide medical evidence indicating that Phillips's declining health was attributable to the Guadalajara airport incident.

### e. Plaintiff Pinheiro

Plaintiff Erika Da Cruz Pinheiro is an attorney who also works for Al Otro Lado, as its Litigation and Policy Director. GF ¶ 3. In the caravan document, Pinheiro's role is described as "[u]nknown." Ex. 25, at 706.

On January 29, 2019, Plaintiff crossed the U.S. border into Mexico at the San Ysidro port of entry. GF ¶ 81. She then spoke with Mexican immigration officers about renewing her business visa. *Id.* ¶ 82. Pinheiro recalled that the Mexican officer told her that there was an alert on her passport, which was "like an alert placed by another country." *Id.* ¶ 83. Mexican officers asked Pinheiro about her work for Al Otro Lado. *Id.* ¶ 87. The Mexican officers then told Pinheiro that she was not permitted to enter Mexico and physically removed her to the U.S. side of the border. *Id.* ¶ 90.

One of the officers who removed Pinheiro told her to attempt to re-cross through the car lane. *Id.* ¶ 91. Ten minutes after her removal, Pinheiro was permitted to cross the U.S.-Mexico border without incident. *Id.* ¶ 92. Pinheiro described this incident as "really traumatic." Plaintiffs' Ex. 5, Deposition of Erika Pinheiro at 166.

Pinheiro now resides in Mexico, where she is currently a permanent resident. GF ¶¶ 76, 96. Pinheiro testified that the alert on her passport had to be waived every time she entered Mexico or required some action to be taken by Mexican immigration. Pinheiro Depo. at 145-47.

Pinheiro crossed the U.S.-Mexico border 130 times before June 5, 2020 and at least 20 times after June 5, 2020. *Id.* ¶ 78. Pinheiro recalls being stopped multiple times by Mexican officers at the border and had her car searched and put through the x-ray machine. *Id.* ¶ 79; App'x 1, Ex. 11, Deposition of Erika Pinheiro at 415. Pinheiro recalls once being stopped by CBP at the border (she did not recall the date), and referred for secondary inspection, where her car was searched. GF ¶ 80; Pinheiro Depo. at 416. Plaintiffs provided no evidence connecting any of Pinheiro's stops by Mexican

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | |

officers, or CBP's referral for secondary inspection, to her inclusion on the caravan document or her work for Al Otro Lado.

### f. This Lawsuit

Plaintiffs filed this lawsuit on July 23, 2019. Dkt. 1. The operative SAC was filed on January 12, 2021. Dkt. 77.

The SAC asserts a First Amendment claim on behalf of all Plaintiffs, based on theories of retaliation and unlawful investigation and surveillance. SAC ¶¶ 149-53. Plaintiff Dennison asserts a Fourth Amendment claim based on his January 10, 2019 questioning at the border. *Id.* ¶¶ 154-159.

Plaintiffs do not seek damages on their constitutional claims. They instead seek injunctive relief and expungement of allegedly unlawfully collected information. *Id.* ¶¶ 153, 158-59.

Plaintiffs also assert various claims under the Privacy Act, 5 U.S.C. § 552a(g)(1)(D). *Id.* ¶¶ 160-68. All Plaintiffs seek amendment and expungement of records. *Id.* ¶ 163, 167. Plaintiff Dennison also seeks damages as a result of Privacy Act violations for income allegedly lost from inability to travel "without fear of reprisal" and his inability to return to Mexico to collect his camera and footage. *Id.* ¶ 164.

## III. Legal Standard

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|

| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* |
|---|---|

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## IV. Application

### a. Plaintiffs Lack Standing to Assert their Constitutional Claims

Plaintiffs bring a cause of action under the First Amendment based on Defendants' alleged retaliation and unlawful maintenance of records. SAC ¶¶ 149-153. As a remedy, Plaintiffs seek to enjoin federal officials and agencies "from continuing its surveillance and detention operations at the border." *Id.* ¶ 153. Plaintiffs also seek "the expungement of all records unlawfully created and maintained pursuant to Defendants' scheme." *Id.*

As a remedy for his Fourth Amendment claim based on his stop and questioning on January 10, 2019, Plaintiff Dennison seeks "an order enjoining any such future intrusive seizures when unsupported by reasonable, articulable suspicion of border-related criminal activity." *Id.* ¶ 158. Plaintiff Dennison also seeks "expungement and destruction of all records which contain information gathered about him as a result of Defendants' unlawful seizure and interrogation on January 10." *Id.* ¶ 159.

For the reasons explained below, Plaintiffs lack Article III standing to seek injunctive relief or expungement of records.

### i. Injunctive Relief

Defendants argue that Plaintiffs lack Article III standing to seek injunctive relief. Dkt. 82-1, at 3-6. The Court agrees.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|

| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* |
|---|---|

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envmtl Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Plaintiffs seeking injunctive relief must show that it is likely that they will suffer future injury from the conduct sought to be enjoined. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983). That future injury cannot be speculative. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). Rather, "[a] plaintiff threatened with future injury" must show that "the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)).

Plaintiffs who have already been injured do not necessarily satisfy the injury in fact requirement to seek injunctive relief. *See Munns v. Kerry*, 782 F.3d 402, 411 (9th Cir. 2015) ("Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects."). Past injury may be "evidence bearing on 'whether there is a real and immediate threat of repeated injury.'" *Lyons*, 461 U.S. at 102 (citation omitted). However, a previously injured plaintiff must still show "a real or immediate threat ... that he will again be wronged in a similar way." *Munns*, 782 F.3d at 41 (citation omitted).

A plaintiff may also have standing to seek injunctive relief by demonstrating an ongoing injury. *See Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) ("Unlike injuries that occurred in the past and may no longer be imminent, ongoing injuries are, by definition, *actual* injuries for purposes of Article III standing."); *Kanuszewski v. Mich. Dep't of Health and Human Servs.*, 927 F.3d 396, 4211 (6th Cir. 2019) (plaintiffs suffered ongoing injury-in-fact based on "ongoing storage of ... blood samples" allegedly in violation of substantive due process); *see also Lyons*, 461 U.S. at 95-96 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." (citation omitted)).

However, the Supreme Court has limited the type of ongoing injury that can constitute an injury in fact. "[A]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|

| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* |
|---|---|

present objective harm or a threat of specific future harm." *Clapper*, 568 U.S. at 418 (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)). Ongoing fear, or actions motivated by such fear, cannot constitute an injury in fact unless supported by "concrete evidence" beyond "mere conjecture about possible governmental actions." *Id.* at 420. "A chilling of First Amendment rights can constitute a cognizable injury so long as the chilling effect is not 'based on a fear of future injury that itself [is] too speculative to confer standing.'" *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 827 (9th Cir. 2020) (quoting *Munns*, 782 F.3d at 410).

Likewise, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of future harm that is not certainly impending." *Id.* at 416 (citations omitted). Such self-inflicted harm would not be fairly traceable to government action. *Id.* at 418.

Applying these principles, the Court concludes that none of the Plaintiffs have suffered an injury in fact sufficient to confer standing to seek injunctive relief. None of the Plaintiffs have put forth evidence supporting a likelihood of future injury, or ongoing injury, that is fairly traceable to the governmental conduct at issue in this case.

## A. Dennison

Since his questioning by CBP officers at the border on January 11, 2019, Dennison has crossed the border frequently. Plaintiff Dennison crossed 116 times between September 22, 2019 and September 22, 2020. GF ¶ 38. Although he was questioned and searched on January 5, 2020, that occurred following his decision to cross 50 yards into Mexico and immediately turn around, which was the subject of his questioning. *Id.* ¶¶ 39-41. In any event, Dennison has no evidence, and does not appear to argue, that the January 5, 2020 search and questioning was motivated by the same government conduct as his January 11, 2019 questioning, or was related in any way to Dennison's appearance on the caravan document or to his work as a documentary filmmaker or for his nonprofit.

There is no evidence in the record, therefore, to suggest that Dennison is likely to be further detained or questioned at the border, or otherwise investigated or retaliated against for protected

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|

| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* |
|---|---|

conduct.[5]  Even if Dennison were continuing the same activities in Mexico that brought him to the government's attention, Plaintiffs have no evidence that any government policies or intelligence collection practices adopted in response to the migrant caravan remain in effect or would be similarly brought to bear on him in the future.  *See Clapper*, 568 U.S. at 414 (rejecting standing argument based on "speculative chain of possibilities" about future government investigative activity).

Nor has Dennison put forth evidence of any ongoing injury that would give him standing to seek an injunction.  While Dennison claimed that he lost opportunities to conduct his work in Mexico and other international locations, nothing in the record supports the conclusion that this was the result of anything but Dennison's own subjective fear.  Nor is Dennison's claim to be subject to continued monitoring by itself sufficient where there is no evidence to suggest that this monitoring would impose any limitation on his ability to cross international borders or continue his journalistic or philanthropic work.  Without evidence to support a continued threat to his travel or other interference with his activities, Plaintiff lacks standing under binding Supreme Court precedent.  *See id.*, 568 U.S. at 418.

Plaintiff Dennison thus lacks standing to seek injunctive relief.

## B.  Phillips

Like Plaintiff Dennison, Plaintiff Phillips also lacks evidence of ongoing or likely future injury.  Phillips offers no evidence to suggest that that the government is continuing operations similar to those it maintained during the 2019 migrant caravan, that she is engaged in conduct likely to lead to similar interference to what she experienced at the Guadalajara airport, or that any similar government investigative activity is likely to be brought to bear on her in the future.  Although Phillips was denied entry to Mexico on August 28, she was able to cross the border, and was granted temporary Mexican residence, the very next day.  GF ¶¶ 66-71.  Nothing in the record suggests any likelihood that she will be denied entry to Mexico again in the future.

---

[5] The Court analyzes together Dennison's standing to seek an injunction for First and Fourth Amendment violations.  *See Clapper*, 568 U.S. at 407-418 (analyzing standing on First and Fourth Amendment claims together).

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|

| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* |
|---|---|

Nor does Phillips point to any evidence demonstrating an ongoing injury that could confer Article III standing. Although Phillips has not frequently traveled across the border since the Guadalajara airport incident, she testified that this was the result of her own choice. She stated that after the airport incident, "we [referent unclear] basically *decided* that I wasn't going to travel to Mexico for the foreseeable future even if it was years." Phillips Depo. at 110-11 (emphasis added). Phillips offers no evidence that any forgone travel to Mexico was likely to have been impeded by her inclusion on the caravan document or the government's investigative activities. Phillips's speculative fear and manufactured injury do not give rise to Article III standing. *See Clapper*, 568 U.S. at 416-18.[6]

Even if Phillips could show ongoing injury or a likelihood of future injury, Phillips has a deeper Article III standing problem. Plaintiffs' only evidence that Defendants' investigative activities interfered with Phillips's travel concern conduct by Mexican, rather than U.S., immigration officers. GF ¶¶ 52-56 (January 31, 2019 Guadalajara airport incident); ¶¶ 66-68 (August 28, 2019 denial of entry at Mexico border). However, the Supreme Court has been "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 413; *see also Lujan*, 504 U.S. at 560 ("[T]he injury has to be 'fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" (quoting *Simon v. Eastern Ky. Welfare Rights. Org.*, 426 U.S. 26, 41-42 (1976))).

Plaintiff Phillips thus lacks standing to seek injunctive relief.

**C. Pinheiro**

Like her co-Plaintiffs, Pinheiro also offers no evidence that her travel is likely to be interfered with in the future, or that she remains the subject of any ongoing investigative activity that poses a risk of interfering with her work.

In fact, Pinheiro has traveled largely unimpeded across the border. Pinheiro crossed the U.S.-Mexico border 130 times prior to June 5, 2020 and 20 times after June 5, 2020. GF ¶ 78. She has also

---

[6] Phillips also testifies that her health worsened after the Guadalajara airport incident. Phillips Depo. at 111. However, Plaintiffs offer no medical evidence connecting Phillips's medical condition to the airport incident or other government activity. In any event, such medical ailments would not be fairly traceable to Defendants' conduct.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | |

received temporary Mexican residency in April 2019, and she is now a permanent resident of Mexico. GF ¶¶ 95-96. No rational trier of fact could find on this record that her inclusion on the caravan document or other federal investigative activities are continuing to, or are likely to, interfere with her ability to travel and carry out her work in Mexico.

Finally, like Phillips, Pinheiro's travel disruptions resulted immediately from the conduct of Mexican immigration officers. GF ¶¶ 81-90 (January 29, 2019 removal after crossing border by Mexican officers), ¶ 95 (waiver of passport alert by Mexican government), ¶ 79 (multiple stops by Mexican immigration officers at border crossing).[7] As discussed with Plaintiff Phillips, even if Pinheiro could show ongoing injuries from this conduct or a likelihood of recurrence, this independent conduct by the Mexican government is not fairly traceable to any activities of Defendants.

Plaintiff Pinheiro thus also lacks Article III standing to seek injunctive relief.

### ii. Expungement

Plaintiffs argue that, even if they lack Article III standing to seek injunctive relief, they still have standing to seek an alternative remedy – expungement.

There is scant authority addressing how Article III standing requirements apply to requests for expungement. As an initial matter, it is clear that Plaintiffs must independently establish, and the Court must independently analyze, standing to seek expungement. As the Supreme Court has held, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envmtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "[A] plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (citing *Friends of the Earth, Inc.*, 528 U.S. at 185).

---

[7] Pinheiro also testified that she was once referred by CBP for secondary inspection. However, Plaintiffs provide no evidence connecting this routine inspection with her inclusion on the caravan document or the investigation related to the migrant caravan.

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|----------|------------------------|------|-----------|

| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* |
|-------|------------------------------------------------------------------------------|

It is also clear that expungement is a form of prospective relief. An expungement order would compel the government to take action in the future to destroy a record. *See Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (concluding that expungement is a form of prospective relief for purposes of Eleventh Amendment immunity). The Court sees no reason why ordinary standing doctrine evolved to address injunctive relief should not apply to a request for expungement as a form of prospective relief.

Cases concluding that a plaintiff has standing to seek expungement have specifically found that the continued existence of a record could adversely affect the plaintiff in the future. In *Flint v. Dennison*, the Ninth Circuit held that a plaintiff's First Amendment claim against his university was not mooted by his graduation because he sought an order to expunge disciplinary sanctions under an allegedly unconstitutional regulation. 488 F.3d at 823-24. The Ninth Circuit specifically noted that "[w]hen a student's record contains negative information derived from allegedly unconstitutional school regulations ... that information may jeopardize the student's future employment or college career." *Id.* at 824; *see also Mayfield*, 599 F.3d at 970-71 (requiring showing that injury from retention of records was ongoing in evaluating standing to seek declaration); *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1275 (9th Cir. 1998) (Plaintiffs had Article III standing to seek expungement of medical records allegedly collected in violation of constitutional right to privacy because the continued storage of medical information was an "ongoing effect" of defendants' conduct).

Similarly, in *Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.*, the D.C. Circuit concluded that an adolescent had standing to seek to expunge her arrest record even though the allegedly unlawful policies resulting in her arrest had been rescinded. 386 F.3d 1148, 1152 (D.C. Cir. 2004) (Roberts, C.J.). The court specifically found that an expungement order, and a related declaration, "would relieve [plaintiff] of the burden of having to respond affirmatively to the familiar question, 'Ever been arrested?' on application, employment, and security forms." *Id.* In other words, the plaintiff had standing because the expungement order would remedy a likely future injury.[8]

---

[8] The Court notes that one appellate court, without analysis, indicated that a plaintiff would have Article III standing to seek expungement without discussing the plaintiff's ongoing injury or likely future injury. In *Tabbaa v. Chertoff*, the Second Circuit concluded – in a footnote – that plaintiffs who had been detained, fingerprinted, and interviewed after returning to the U.S. from an Islamic conference in Canada would have standing to seek expungement of information retained about them. 509 F.3d 89, 94-96 n. 2 (2d Cir. 2007). The only authority the court cited discussing Article III standing to seek expungement, however, was *Hedgepeth*, which, as noted above, is entirely consistent with this Court's conclusion. The court

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | |

Plaintiffs rely heavily on *Fazaga v. F.B.I.*, a case concerning undercover recordings of Muslim Americans. But *Fazaga* did not address Article III limitations on the expungement remedy. The government argued that expungement was not available because "Plaintiffs 'advance no plausible claim of an ongoing constitutional violation.'" 965 F.3d at 1054. In other words, the government was arguing that expungement could only be a remedy if maintenance of the record itself violated the constitution – not that Plaintiffs lacked Article III standing to seek expungement as a remedy. Nor did the *Fazaga* court reach Article III standing. The *Fazaga* court only held that expungement was available as a remedy for a Fourth Amendment violation – not that the plaintiffs would have Article III standing even absent evidence of an ongoing or likely future injury. 965 F.3d at 1054-55 (holding that "expungement relief is available under the Constitution to remedy the alleged constitutional violations").

Plaintiffs also rely on *Guan v. Mayorkas*, a case from the Eastern District of New York brought by other individuals on the same caravan document who alleged similar interference with travel. 2021 WL 1210295 (E.D.N.Y. 2021). The court denied a motion to dismiss for lack of standing as to the expungement remedy. *Id.* at *12-*17. The *Guan* court held that the plaintiffs had plausibly alleged that the government's continued retention of information constituted an ongoing injury, and that expungement would "eliminat[e] the ongoing effects of the alleged constitutional violation." *Id.* at *16-*17; *see also Alasaad v. Nielsen*, 2018 WL 2170323 (D. Mass. 2018), *rev'd in part on other grounds*, 988 F.3d 8 (1st Cir. 2021) (denying motion to dismiss for lack of standing and concluding that "[r]etention of data illegally obtained by law enforcement may constitute harm sufficient to establish standing to seek expungement."). As it was ruling on a motion to dismiss, the *Guan* court was not evaluating whether the evidence supported an ongoing injury. And while the court concluded that "the retention of the information itself constitutes an injury regardless of its effect on Plaintiffs," *Guan*, 2021 WL 1210295, at *16, that conclusion was unexplained, and in any event is not binding on this Court.

\* \* \*

---

did not elaborate on its rationale, simply stating, "Defendants properly do not contest that plaintiffs possess Article III standing based on their demand for expungement." *Id.* at 96 n.2. *Tabbaa* therefore has little persuasive value on this point.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | |

Having concluded that Plaintiffs must still show an injury in fact to demonstrate standing to seek expungement, the Court now turns to the facts of this case.

As discussed at length above, Plaintiffs have pointed to no evidence suggesting that their inclusion on the caravan document, or in any other intelligence product, constitutes an ongoing injury or poses any likelihood of future injury. Nor has Plaintiff Dennison pointed to any evidence regarding how records of his questioning by CBP currently affect or are likely in the future to affect him.[9]

Plaintiffs also have not argued, or pointed to evidence, suggesting that Defendants collected records about them that are so sensitive that their retention alone constitutes a continuing injury or produces a chilling effect on their First Amendment-protected activity. *Cf. Norman-Bloodsaw*, 135 F.3d at 1275 (retention of results of medical examinations constituted ongoing privacy injury).

Moreover, Plaintiffs have not shown that any of their injuries are redressable by expungement. Plaintiffs have not explained how any chilling effect is even exacerbated by Defendants' continued retention of records. Plaintiffs present no evidence that the retention of records makes it any more likely that they will be investigated in the future. Nor have Plaintiffs offered evidence that an expungement order would minimize any fear Plaintiffs currently experience. *See Mayfield*, 599 U.S. at 972 (redressability element not met where "redressability depends upon the actions of the government in response to the court's judgment").

For the foregoing reasons, the Court concludes that Plaintiffs lack Article III standing to seek expungement.

### b. Privacy Act Claims

Plaintiffs also bring claims under the Privacy Act of 1974. That Act "contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies." *F.A.A. v. Cooper*, 566 U.S. 284, 287 (2012).

---

[9] In fact, Plaintiffs do not even clearly identify what documents they would seek to expunge if they prevailed on their constitutional claims.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | |

Specifically, Plaintiffs seek remedies under 5 U.S.C. § 552a(g)(1)(D) for alleged violations of subsections (d)(2), (e)(1), (e)(5), and (e)(7) by the FBI, ICE, and CBP.  SAC ¶¶ 160-68.  Plaintiff Dennison seeks damages as well as injunctive relief.  *Id.* ¶¶ 163-64.  Plaintiffs Phillips and Pinheiro seek only injunctive relief.  *Id.* ¶ 167.

Subsection (d)(2) of the Privacy Act permits an individual to request an amendment of records in an agency's system of records.  5 U.S.C. § 552a(d)(2).  Subsection (d)(3) allows an individual to seek an internal review from the refusal to amend a record.  *Id.* § 552a(d)(3).  Judicial review of a refusal to amend after an internal review is available under section 552a(g)(1)(A).

Subsection (e) of the Privacy Act imposes particular requirements on systems of records maintained by agencies.  Subsection (e)(1) requires an agency to "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President."  *Id.* § 552a(e)(1).  Subsection (e)(5) requires agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  *Id.* § 552a(e)(5).  Subsection (e)(7) states that agencies shall "maintain no record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity."  *Id.* § 552a(e)(7).

For the reasons stated below, all of Plaintiffs' Privacy Act claims fail.

**i. The Privacy Act Claims Fail as to FBI and ICE**

ICE responded to Plaintiffs' Privacy Act request by stating that it found no responsive records.  GF ¶ 165.  Because Plaintiffs cannot show that ICE possessed any records subject to amendment under (d)(2), their claims as to ICE fail.  *See Crummey v. SSA*, 794 F. Supp. 2d 46, 59 (D.D.C. 2011), *aff'd,*

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | |

2012 WL 556317 (D.C. Cir. 2012) ((d)(2) claim fails where no reasonable finder of fact could conclude that the relevant record exists).[10]

Turning to the FBI, Plaintiffs' Privacy Act request turned up no responsive records for Phillips and Pinheiro. GF ¶ 167. Accordingly, and for the same reason their claims against ICE fail, Plaintiffs Phillips and Pinheiro's Privacy Act claims fail as to the FBI.

Although the FBI found documents responsive to Plaintiff Dennison's request, GF ¶ 166, the FBI concluded that those requests were exempt from the requirements of the Privacy Act under 5 U.S.C. § 552a(j)(2).

Subsection (j)(2) provides that "[t]he head of any agency may promulgate rules ... to exempt any system of records within the agency from any part of this section except subsections [including (e)(7)] ... if the system of records is maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws...." 5 U.S.C. § 552a(j)(2).

Where an agency has validly used this process to exempt itself, claims against that agency for a violation of the exempted subsection must be dismissed. *See Alexander v. United States*, 787 F.2d 1349, 1351-52 (9th Cir. 1986); *see also Bhatia v. Office of U.S. Att'y*, 507 F. App'x 649, 650 (9th Cir. 2013); *Shearson v. U.S. Dep't of Homeland Sec.*, 638 F.3d 498, 505 (6th Cir. 2011) ("Where an agency properly exempts a system of records from exemptive provisions under § 552a(j), no civil liability can attach for violation of those provisions." (citations omitted)).

As numerous courts have found, the FBI has validly exempted its records from the requirements of subsections (d), (e)(1), and (e)(5) under 28 C.F.R. § 16.96. *See Bhatia*, 507 F. App'x at 650 ("The district court properly dismissed [Plaintiff's] claims under 5 U.S.C. §§ 552a(d)(2) and (e)(5) because the records he sought to amend were exempt from these Privacy Act requirements under Department of Justice ('DOJ') regulations." (citation omitted)); *Sieverding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93,

---

[10] Although Plaintiffs claim that discovery revealed ICE contained records relating to Dennison, PF ¶ 40, Plaintiffs present no evidence that these documents came from a system of records maintained by *ICE*. *See* 5 U.S.C. § 552a(5). In any event, Plaintiff Dennison's claims as to the alleged ICE records would fail for the same reasons as his remaining claims, as explained in detail below.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | Date | 6/22/2021 |
|---|---|---|---|

| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* |
|---|---|

102-03 (D.D.C. 2010) (granting summary judgment for FBI under subsections (d), (e)(1), and (e)(5) because FBI "has exempted its record systems from the Privacy Act's maintenance, amendment, and explanation provisions").

Accordingly, Plaintiff Dennison's Privacy Act claims against the FBI fail, except for his claim under subsection (e)(7), which is not exemptible, *see Shearson*, 638 F.3d at 504, and is addressed in the discussion regarding actual damages below.

### ii. Plaintiffs' Claims as to CBP under (d)(2) Were Unexhausted

CBP responded to Plaintiffs' Privacy Act request by stating that it did have records related to Plaintiffs Dennison, Phillips, and Pinheiro.  GF ¶ 168.  However, the agency concluded that the responsive records did not violate the Privacy Act.  *Id.*  Plaintiffs did not seek an internal review of CBP's determination.  *Id.*

Failure to exhaust administrative remedies precludes judicial review under subsection (d). Section 552a(g)(1)(A), which contains the relevant remedies provision for subsection (d) claims, provides a cause of action "[w]henever any agency makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection."  5 U.S.C. § 552a(g)(1)(A).[11]  Because subsection (d)(3) provides for internal appeals from the denial of a request under subsection (d)(2), a cause of action plainly only lies based on a failure to conduct an internal appeal or the denial of that internal appeal.  *See Hewitt v. Grabicki*, 794 F.2d 1373, 1377-78 (9th Cir. 1986) (affirming dismissal without prejudice for failure to internally appeal denial of record amendment request under subsection (d)(3)); *Gillman v. United States*, 2017 WL 969180, at *4 (D. Haw. 2017) (granting summary judgment for defendants where plaintiff "provides no evidence to show that he appealed" the denial of his amendment request).

Plaintiffs do not provide evidence that they filed or attempted to file an administrative appeal of CBP's denials of their amendment requests.  Rather, they argue that "CBP failed to provide for an

---

[11] Defendants argue that the Court need not reach the exhaustion issue because the SAC fails to specifically cite the relevant remedies provision, instead citing only 5 U.S.C. § 552a(g)(1)(D).  The Court will assume for purposes of decision that the SAC properly sought a remedy for a failure to amend under section 552a(d).

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | | Date | 6/22/2021 |
|---|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | | |

appeal process in response to Plaintiffs' requests." Dkt. 94, at 24. The CBP denial letters, however, specifically state that "[i]f you are in disagreement with our decision regarding your request for amendment, you may submit a written statement of disagreement to our office." App'x III, Exs. 39-41. The letters then cite subsection (d)(3), which describes the internal appeal process. The author of the denial letters provided her phone number and email address, and a general email address and phone number of the CBP Privacy Division were provided in the letterhead. *Id.* Accordingly, CBP satisfied the requirement to inform the requestor of "the procedures established by the agency for the individual to request a review of [its] refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official," 5 U.S.C. § 552a(d)(2)(B)(ii). Consequently, CBP did not deny Plaintiffs an opportunity to file an administrative appeal.

On this record, there is no genuine dispute that Plaintiffs failed to file an internal appeal to CBP, and no evidence would support a finding that CBP failed to conduct an internal appeal upon request. Accordingly, Plaintiffs' subsection (d)(2) claims fail as to CBP.

### iii. Plaintiffs Have No Claim for Injunctive Relief under (e)(1), (5), or (7)

Although exhaustion is not required for claims under subsection (e), Plaintiffs' claims under subsections (e)(1), (5), and (7) fail to the extent they are seeking injunctive relief.

Well established case law interprets the Privacy Act to limit the availability of injunctive relief to particular subsections. "Congress intended to limit the availability of injunctive relief to the categories of agency misconduct for which injunctive relief was specified as a remedy." *Fazaga*, 965 F.3d at 1063 (citing *Cell Assocs., Inc. v. NIH*, 579 F.2d 1155, 1161 (9th Cir. 1978)); *see also Doe v. Chao*, 435 F.3d 492, 504 (4th Cir. 2006) (collecting cases).

The Privacy Act does explicitly authorize injunctive relief for violations under subsection (d) by describing injunctive relief in the associated remedies provisions. *See* 5 U.S.C. § 552a(g)(1)(A)-(B), (2), (3); *Cell Assocs.*, 579 F.2d at 1161 ("While the right to damages might seem an inadequate safeguard against unwarranted disclosures of agency records, we think it plain that Congress limited injunctive relief to the situations described in 5 U.S.C. § 552a(g)(1)(A) and (2) and (1)(B) and (3)."). However, those provisions do not provide relief for claims under subsection (e). Rather, subsection (e) claims fall

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:19-cv-06338-SVW-JEM | | Date | 6/22/2021 |
|---|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | | |

under the Act's other civil remedy provisions. *Id.* § 552a(g)(1)(C)-(D). The Privacy Act only gives a damages remedy for those claims. *Id.* § 552a(g)(4).

Accordingly, Plaintiffs' requests for injunctive relief under subsections (e)(1), (5), and (7) fail because the Privacy Act does not allow such relief. *See Fazaga*, 965 F.3d at 1063 (holding that plaintiffs failed to state a claim for injunctive relief under subsection (e)(7)). Plaintiff Dennison's injunctive relief claims under those subsections also fail, but his request for damages must be addressed separately below.

### iv. Plaintiff Dennison Lacks Evidence of Adverse Effect or Actual Damages

The only remaining claim is Plaintiff Dennison's claim for damages for violations of subsections (e)(1), (e)(5), and (e)(7) under 5 U.S.C. § 552a(g)(1)(D). SAC ¶ 164.

To recover damages under section 552a(g)(1)(D), the agency's failure to comply must have "an adverse effect on an individual." Additionally, damages are only appropriate where "the court determines that the agency acted in a manner which was intentional or willful" and the plaintiff can show "actual damages sustained by the individual as a result of the [agency's] refusal or failure." 5 U.S.C. § 552a(g)(4)(A).

The Supreme Court has held that "actual damages" under section 552a(g)(4)(A) does not include damages for mental or emotional distress. *See Cooper*, 566 U.S. at 287. It is limited to "proven pecuniary or economic harm." *Id.* at 299.

Such pecuniary or economic harm must have been proximately caused by the government's record-keeping failure. *See Rouse v. U.S. Dep't of State*, 567 F.3d 408, 417 (9th Cir. 2009) (quoting *Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990)).

As discussed above in connection with Article III standing, Dennison has presented no evidence of pecuniary or economic harm connected to any documents the government has collected or maintained about him. It is undisputed that donations to Plaintiff's nonprofit in 2019 were higher than in any previous year. GF ¶ 50. Although Plaintiff Dennison claimed that he lost economic opportunities from

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:19-cv-06338-SVW-JEM | | Date | 6/22/2021 |
|---|---|---|---|---|
| Title | *Nora Phillips et al. v. United States Customs and Border Protection et al.* | | | |

an inability to travel, and that he lost equipment and footage in Mexico due to his inability to return, SAC ¶ 164, he cannot show these losses were proximately caused by government records violating the Privacy Act. There is nothing in the record to suggest that Plaintiff's losses were the result of anything but his own choices rather than government interference. Accordingly, Plaintiff Dennison fails to show the requisite pecuniary or economic harm proximately caused by a Privacy Act violation.[12]

### V. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in full.

IT IS SO ORDERED.

---

[12] The Court notes that the Fourth Circuit has held that a Plaintiff may still recover attorney's fees and costs even without a showing of actual damage. *See Doe v. Chao*, 435 F.3d 492 (4th Cir. 2006). Plaintiff has not requested attorney's fees and costs independently of a request for actual damage. Dkt. 94, at 24-25. In any event, there is no evidence in the record supporting any Defendant's "intentional or willful" conduct. Plaintiff has not pointed to any particular error in CBP or other records. However, even assuming Plaintiff is referencing the intelligence implicating him in the migrant caravan, there is no evidence that, if erroneous, such errors were the result of conduct more culpable than negligence. *See Lewis v. Mossbrooks*, 788 F. App'x 455, 458 (9th Cir. 2019) (noting that "intentional or willful" under section 552a(g)(4) "requires a showing of something more than gross negligence" (citing *Covert v. Harrington*, 876 F.2d 751, 756 (9th Cir. 1989)). The failure to present evidence of intentional or willful conduct constitutes an independent basis for granting summary judgment on Dennison's damages claim.

| | : |
|---|---|
| Initials of Preparer | PMC |